I'm going to move to case number 5 of the morning. This is Appeal 22-3098 United States v. Travis. And we'll begin with oral argument from Mr. Campion. Thank you and good morning. May it please the court. Jamie Travis appealed the district court's finding that Deputy Hobbs' search, however illegal, was ultimately saved by the Doctrine of Inevitable Discovery. That, in other words, there would have been an inventory search conducted on the car after the car that Travis drove was towed to the impound yard. Mr. Campion, let me follow up on that. Let's presume, just for purposes of this discussion, that the magistrate was incorrect and that there was problems with the conclusion that Deputy Hobbs did an inventory search. Is your argument that upon the impoundment of the vehicle, of the Prius, that there would not have been an inventory search done by the Sheriff's Department when the car got to impound? My argument is that there is no evidence in the record that there would have been that search, which we normally view in terms of an inevitable discovery argument, because the policy says this and that. The policy is in the Exhibit 2, correct? It is, but in this case, we actually have not simply the dearth of anything that corroborates that, but Deputy Hobbs' somewhat aggressive testimony that I am the inventory search. He said that four times during his testimony. So that's my argument. This can't be saved because we don't have any reason to believe that there actually would have been a second attempt at doing an adequate inventory search. Can I ask you a similar question? Absolutely. Here's what, I'm going to put this very directly, maybe too directly, but you can sort this out for us. There's no question you're right that Deputy Hobbs testified that he believed or he thought he was doing an inventory search, a roadside inventory search. The legal question I have is what difference does it make that he thought that? Who cares what he thought? In other words, why don't we just objectively focus the Fourth Amendment analysis on what he did, and then ask the question of did his conduct violate your client's Fourth Amendment rights? In other words, all I'm trying to get at is subjectively, he believed he was doing some kind of roadside inventory search, like a phase one inventory search, and my question is who cares that he thought that? Well, roadside inventory searches, on-scene inventory searches aren't that bizarre. It happened in Cartwright and in Cherry. Those happened at the scene rather than after it can occur, and we don't have any reason to believe that it would have occurred, because if we look at the policy, the policy states all property in a stored or impounded vehicle shall be inventory enlisted on the vehicle storage form. It doesn't say when it should occur. It doesn't say you, the deputy, or some other employee of the Sheriff's Department shall do it after it's towed and impounded. It seems to be able to happen at any time, and Hobbs is very direct, and I'm going to use the word again, somewhat aggressive testimony. This is the way it was. The government did not put anything else in the record to say this actually would have been, there would have been a separate search down the line, and they could have, had that been the case, had it actually been the case that there was going to be a separate search when it was impounded, they could simply have introduced into the record the fact of the inventory search at the impound yard. But you don't have to do that. That's one way, certainly, but why wouldn't the policy here be sufficient to meet that? Because again, the policy doesn't state when it should occur, and Hobbs is telling us that it happens with me right now, and if the government wasn't, if the government was concerned that wait a second, this is actually not the inventory search, it would have happened, indeed perhaps it did happen, that's a matter of getting that in through Hobbs or any other witness that the government could have called had it actually happened. We have no reason to think it actually did happen. But can you go back to had it actually happened? It doesn't have to actually happen, does it, under the law? No. If he had, if Hobbs' search was not proper, but they would have conducted an inventory search properly and found the evidence, not that they actually did, why isn't the policy sufficient to prove they would have? That's the rub, though. The policy says an inventory search shall be done, and it lists all the reasons for doing it and how it should be done. It doesn't say when, and the law So is your argument, Mr. Campion, use it or lose it, meaning it happens once and search is singular, not plural? Well, it could have been twice, but there's no reason to think it would have been twice. Twice seems rather unusual and a waste of resources, but in this case it did happen the one time. It happened in a miserable way, it wasn't an actual inventory search, but we have no reason to believe that it would have happened otherwise. The policy doesn't say it shall happen later on, it just says you've got to do it. Hobbs says he did it. That's the core of my argument. If a search like this, a bad effort at an inventory search, can be salvaged by simply leaning on the policy and there's no evidence to support that there would have been one, then I lose. But in this case, it's different than a normal inventory search case where no one claims to have done an inventory search, and a gun or a contraband was found so that who cares what happened, it doesn't matter what did or did not happen down the line. In this case, Hobbs did an inventory search, what he claims was an inventory search, and he found a gun, and there's no reason to think that this was not the inventory search. And as Judge Stadmiller pointed out very clearly, this wasn't an inventory search pursuant to anything close to Florida V. Wells. The video of the search shows Hobbs picking up and tossing items down the back seat and not going through all the containers in the trunk. So if that's not a clearly erroneous finding, that it was not an inventory search conducted by Hobbs, then why wouldn't the policy be sufficient to establish that Hobbs didn't do an inventory search, but one would have been done properly? Well, again, I'm sorry for maybe I'm not entirely understanding the court's point, but I think in this case, we have reason to believe that it wouldn't have been done because the government witness, Deputy Hobbs, I think he'd been in the force for two years at the time, he talked about his experience doing inventory searches, he talked about how he did them. He says, I'm the guy that did it. He had the tow truck driver wait until he concluded his inventory search, and then he testified, after I concluded my inventory search, I let him go. There's nothing to follow that up. There's just no reason to believe it would have happened. If he had, I will admit, I will acknowledge that had he gone about his searches, had the tow truck driver, who remarked with alarming alacrity, it was amazing how quickly he got there, had he said, hang tight for a minute, I know we're on the freeway, but just hang tight, I got to go through this, and had his clipboard or whatever, and done all those things, and the court found that it wasn't unreasonable for him to have brushed aside the owner of the car's desire to take the car home, then it would have been a reasonable inventory search. What about if the gun had not been found on the freeway, but found in the impound lot, in the glove compartment? Well, that would have been evidence of an actual good inventory, and voila, that would be it. Isn't the way to sort through this to just, you make a very fair point that the inventory search aspect of this is quite messy, but I don't see how the search is problematic as incident to arrest, given all of the questions about the car. The dealer plates, the no insurance, the no driver's license, all of that. So under our reasoning in Edwards, I wonder whether it's just not a much straighter path to view it as a search incident to arrest. Well, we have to look at what Edwards was about. Edwards was about, I believe a woman claimed her boyfriend stole her car, so it's a situation where they have cause to believe that this guy may have stolen the car. So within the car is evidence of ownership of the car. That was not an issue in this case. There was no issue that Travis was driving someone's car without consent. And whatever else was in the car, for instance- You have no insurance, you have no driver's license, you have these dealer plates. But all of those things were accomplished at that time. He had cocaine in his pocket, personally used cocaine. He said, I use cocaine. There was no reason to believe that there's going to be anything else in the car to support the fact that he had cocaine in his pocket. He did. And with regard to lack of insurance, as I think the magistrate judge pointed out, once he demonstrates he doesn't have it, he can't show it. It's again, it's a- What about, no, searching the glove box and, whose car is this? That's just an investigatory search at that point. It doesn't go to whether he has insurance. He's not saying I have insurance. He's not displaying his car. He's not saying it's my car, I have proof of it. He's got his girlfriend on the phone saying it's my car. There's nothing nothing, certainly the lower court, neither judge thought that there was anything that was in the car related to what they found, related to what he was ticketed for or what they found in his pocket that had anything to do with it. Indeed, Judge Stadmiller said that, that the, excuse me one second here, the search of the defendant's persons and the fruits of that search are non-issues in this case. And they're also non-issues because of course the forfeiture issue. In his brief, the government made an admission, which it had to, that regarding some of the arguments in support of the search, it admittedly, albeit unintentionally, forfeited. And I'm going to argue that the record favors the conclusion that the government chose not to make the bulk of its arguments at the district court level that it now makes here, intentionally so. Let's look at the choices the government made. It did not develop the record of the hearing to show that a second post-tow in-pound lot inventory search did take place or even that it probably would take place. It did not argue in its initial post-hearing brief that the personal use cocaine found on Travis justified either a Gantt search incident to arrest or a search based on probable cause, the automobile exception. It did not object to the magistrate's finding that, quote, the as a search incident to arrest, end quote. And in its response to Travis's objections to the magistrate's recommendations, not one word on inevitable discovery. The government has made deliberate choices. In so doing, the government acted deliberately. A common distinction we draw, if this court says in Ortiz's 2005 case, a common distinction we draw, is that the government acted deliberately, whereas forfeiture occurs through neglect. Thank you, Mr. Campion. We are going to give you time on rebuttal. Thank you. Thank you. We'll now move to Ms. Tableson on behalf of the government. May it please the court, Rebecca Tableson on behalf of the United States. There are multiple straightforward ways to resolve its appeal because Deputy Hobbs's search of the Prius was constitutional several times over. The judgment below is therefore correct, although we respectfully disagree with the district court's criticism of the search. The district court relied on the inevitable discovery doctrine to deny the motion to suppress, and this court can too. For that doctrine to apply, the evidence must show by a preponderance that law enforcement would have conducted an inventory search had Deputy Hobbs not conducted his search. What's the best evidence that law enforcement would have done so? The evidence is, first, that the Prius was lawfully impounded and had to be towed, and second, the Milwaukee County Sheriff's Office policy, which was in evidence and also discussed at length at the hearing, requiring that any such vehicle towed off the highway be impounded. In multiple other cases, this court has upheld the application of the inevitable discovery doctrine on a much more attenuated factual record. I'm thinking of cases like Stotler and Sims. This case is really on all fours with Cartwright, in which an inventory search occurred, but the officer did not write it all down on a written inventory form, so it was defective in just the way Deputy Hobbs' search was defective. And this court said, first of all, not every deviation from the written policy necessarily renders an inventory search constitutionally unreasonable, and second of all, anyway, the inevitable discovery doctrine applies here. So is the government's position that the roadside search was an inventory search or phase one of an inventory search? Yes, I think the magistrate reasonably concluded that the inventory search, although not a perfect mapping on to MCSO's policy, was reasonable enough to satisfy the Fourth Amendment definition of an inventory search. Under cases like Florida v. Wells, an inventory search has to be sufficiently regulated to satisfy the Fourth Amendment, even if it doesn't map on to the letter of the county policy. It's a little hard to see that when you watch the body cam of the actual search. He's not thoroughly looking through the car. He goes to the glove compartment. To say it's an inventory search suggests that there is some measured way of looking through the car for any items that might belong to the defendant here, and that's not what I see in the body cam. I hear you, Judge, and I don't think it's the strongest way to defend the search, to be clear. I think the strongest way is, as Judge Scudder noted, the search incident to arrest doctrine. As to the—just to finish on the inevitable discovery point, however, I think what my friend, Mr. Campion, is sort of missing here is the whole conceptual foundation of inevitable discovery is, what would have happened had the allegedly unlawful search not occurred? And that is the question we're answering there. And so that means, what would the police have done had Deputy Hobbs never gone through the car? In that instance, the impoundment and inventory search policy is sufficient to prove that. Is there any evidence that there actually was an inventory search at some point? Not that's presently before the court on this record. Not separate from what was already there. From the policy itself, right? The thing that's odd about—that I find very counterintuitive about the inventory search is that the stop is along I-794, right? That roadside along a major highway in Milwaukee, after a stop for speeding, that the police officers would be pursuant to municipal policy conducting an inventory search roadside. That seems very odd to me, that what you would do is you'd call the tow truck, the car would head to the station house or the impoundment lot, and the inventory search would proceed. Well— I mean, that seems to be the fair import of a policy like this. What Deputy Hobbs testified was that he went to the car to do a quick search before the tow truck came for two reasons. Search incident to arrest of Mr. Travis, and an inventory search to take a quick look at what was inside the car before it was towed away. Now, as a legal matter, do you think that his reasons make any difference whatsoever? No, subjectively, they do not. I only mean to say that the case was sort of litigated on both of those tracks from the get-go. The evidentiary hearing, you know, investigated both the search incident to arrest doctrine and the inventory search doctrine. And to the extent Your Honor is asking, you know, isn't this kind of a weird thing for a deputy to do on the side of an urban highway at night? I'm offering his explanation, you know— No, yeah. I think that's what's—that's what's created some analytical confusion, is he may have, and he may have in good faith, held the belief that he was conducting an inventory search along I-794. But that belief or that view is neither here nor there. It just seems to me that we ought to focus on what, in fact, did he do? He entered the Prius, he looked in the glove box, he found a gun. And the question from there is, were Mr. Travis' Fourth Amendment rights violated as a result of that action? Regardless of the belief that this was a phase one inventory search or whatever he had running through his mind. And I'm not saying that critical of him. It just doesn't matter what he thought. I fully agree. And for the same reason, it doesn't matter that he thought subjectively he might not find more evidence of drugs in the car after he found the cocaine in Mr. Travis' pocket. Under this court's precedent, he was still entitled under Gantt to search the car after Mr. Travis' arrest with that cocaine in his pocket. But you didn't make that argument below. It's hard for you to stand here and make it. Or develop the record on that. I'm going to disagree on the latter point. The record of the evidentiary hearing was about both the search incident to arrest doctrine and the inventory search doctrine. Not the search incident to the arrest because of the cocaine. Maybe because of the vehicle license and not knowing whose car it was. But I don't think there was a development of the search incident to arrest because he found cocaine in his pocket. Well, I think I disagree, Judge St. Eve, because in the sense that the evidentiary hearing explained everything that had happened, including all those traffic violations, you know, unlawful dealer plays, and the cocaine in the pocket. Other than cocaine in the pocket, there wasn't really anything else about that. But putting that aside, whether or not you develop the record, I didn't see any argument before the district court that this was a search incident to arrest because of the cocaine in the pocket, which may have been your strongest argument. I think it's fair. I think the magistrate did find that we had forfeited the cocaine-based incident to arrest argument because he said the officer conceded that he subjectively did not expect to find more drugs in the car. That's DACA 34-6. Again, that goes back to Judge Scudder's question about that not really being relevant. I'm not relying on that. I'm relying on the magistrate. We definitely made a search incident to arrest argument citing Edwards and explaining how these traffic— Based on the cocaine in the pocket? No, no. Absolutely. That's my point. Yes. It's a little bit of a confusing sentence. Edwards is all about whose car is this, and is it stolen, and all that. Edwards almost could not be clear that this is a search incident to arrest case. Most obviously, the dealer plates, the unlawful dealer plates on the car support a search of the car for evidence of its ownership. It's almost a slam dunk. Notwithstanding the FaceTime conversation? Absolutely, Your Honor. There was no evidence linking the dealer plates to the woman on FaceTime who was claiming ownership of the car. As was explained at the hearing, the dealer plates are only lawful for a car that's offered for sale by a dealership. There was also no indication that the car was offered for sale. Even so, even if the woman had in some way claimed affiliation with the dealership, the officer would have been entitled to look in the glove box for evidence corroborating that of the car's ownership. In other words, he's not legally compelled to accept an explanation on FaceTime roadside. Of course not. As this court has written the case to me, right now it's escaping me. I just read it this morning. They're not compelled to accept the explanations offered by the There's one thing in the record, Ms. Tableson, that shows why Deputy Hobbs puts the cocaine back in Mr. Travis's pocket. I think the record indicates, Judge Brennan, that he needed both hands to handcuff Mr. Travis, but Mr. Campion might remember that better than me because he was at the hearing. That was my memory from the re-reading the transcript. I don't think that was an issue that was disputed between the parties, though, and if I'm misremembering, I'm sure my friend will correct me. The reason I ask is, normally when contraband arises on an inventory search, it wouldn't be given back to the defendant. That's why I raise it. Yes, absolutely. Mr. Campion can speak to it. Absolutely. I think just to quickly, I think there is absolutely no indication on this record of waiver. The magistrate did make a pretty aggressive finding of forfeiture against the government on this search incident to arrest doctrine, and then what happened is, but we still prevailed on the inventory search argument, and then what happened is the defendant objected up to the district court, focusing only on inventory search and inevitable discovery. We responded on those points, but did not seek to re-litigate the parts of the magistrate judge opinion that had gone awry for the government, and that's how the case made it to the district court. Nevertheless, the district court still did address search incident to arrest, which means that this court can too, if it wants. If nothing else, however, a full and proper application of the Fourth Amendment shows that Deputy Hobbs was doing good police work on the side of the highway at night in Milwaukee, constitutionally apprehending a felon with a violent past and cocaine in his pocket, who was speeding on the highway in an unlawfully registered vehicle with a loaded gun and a unsecured seven-year-old child. There's no basis to suppress the evidence that Deputy Hobbs found that night. If there are no further questions, we ask that we're confirmed. Thank you, Ms. Tableson. Mr. Campion, we'll give you three minutes on rebuttal, if you might be able to address that cocaine question. That was puzzling when I first saw it on the video. I don't think Ms. Tableson is off base. I think he, it almost sounded as if he was somewhat offended because he kind of shoved it back in and he got ready to handcuff him and then took it out again. He actually said, you're under arrest, and he said, you lied to me, and I climbed Mr. Travis. I'm sorry, man, I do cocaine. I don't know if he was actually offended or not, but it was an odd thing. He was a man on an island at that time. He was the only police officer there. I don't want to fault him for that. I want to address a couple of things about this scene. Coincidentally, this scene is right out my window. I don't know if Judge Brennan, you're aware, our office moves across the street. We're on the 23rd floor of that lovely Corals Building. I'm looking at this scene every day. All three of us have driven this quite a bit. There was room to do what he did. He did approach from the passenger side. I think there's evidence of that because Deputy Hobbs drew the child's mom to that scene for the exchange of a child at that very scene. He did have room. Another thing about Deputy Hobbs, I believe he testified during the hearing that he's a field training officer, and two underlings showed up to watch him do his work. He showed them how to package up a gun and that kind of thing. This is a guy with at least some level of experience and respect within his community. Judge Scudero, I think you said it doesn't matter what he thought. I understand his subjective notions can be placed aside at times. What does matter is that this is a deputy field training officer and the only witness for the government who was asked to articulate about this policy. He did. What he articulated is that he did it right then and there. That's where he did the search. I appreciate the government's concerns for any person, certainly a police officer as well, about his reputation. That said, there was no finding that he was discredited, just a finding that he made some aggressive errors. This is what should happen when a police officer does that. There should be findings that, no, this is constitutionally invalid. What happened at the district court level is perfectly appropriate with those findings. The last thing I would say is, not to get on my high horse, but two things. The doctrine of inevitable discovery is what this court has said is not to be invoked lightly and it shouldn't be. We're also talking about the rule of law. Every time one of my clients gets sentenced, the court talks about the rule of law. The rule of law should apply here. The arguments the government forfeited should be forfeited. The government has failed to demonstrate that there probably would have been a search. There's a preponderance of the evidence standard. It's not that much, but they gave us nothing. Thank you very much. Thank you Mr. Campion. Thank you Ms. Tableson. The case will be taken under advisement.